## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

BARBARA A. GRIMES,

        Plaintiff,

   vs.                       **Case No. 07-4007-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.

_____

### MEMORANDUM AND ORDER

Plaintiff has filed applications for disability insurance benefits and supplemental security income benefits.  Plaintiff alleges an onset date of March 10, 2000.  Plaintiff's applications were denied on the basis of an April 30, 2004 opinion of an Administrative Law Judge (ALJ).  Defendant has adopted the ALJ's decision to deny benefits.  This case is now before the court to review defendant's decision to deny benefits.

I.  STANDARD OF REVIEW

The court reviews defendant's decision to determine whether the decision was supported by substantial evidence and whether the correct legal standards were applied.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence is such evidence that a reasonable mind might accept to support the conclusion. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  The court must examine the record as a whole, including whatever in the record

fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision.  <u>Glenn</u>, 21 F.3d at 984.

II.  ALJ DECISION (Tr. 84-95)

The ALJ's decision sets forth a five-step sequential analysis which is followed in this kind of case:

> If the claimant is performing substantial gainful work, she is not disabled.
>
> If the claimant is not performing substantial gainful work, her impairment(s) must be severe before she can be found to be disabled.
>
> If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry.
>
> If the claimant's impairment (or impairments) does not prevent her from doing her past relevant work, she is not disabled.
>
> Even if the claimant's impairment or impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

(Tr. 85).

In this case, the ALJ decided that plaintiff's applications for benefits should be denied on the basis of the fifth or last step of the evaluation process.  In other words, according to the ALJ, plaintiff met the insured status requirements, has not engaged

in substantial gainful activity since March 10, 2000, and has severe impairments which prevent her from returning to her past relevant work.  The ALJ decided, however, that plaintiff maintained the residual functional capacity (RFC) to perform certain types of sedentary work which existed in the economy.

More specifically, the ALJ determined that plaintiff has the following combination of "severe" impairments:  fibromyalgia; chronic hepatitis C with normal lab studies and liver function tests; GERD (gastroesophageal reflux disease) with hiatal hernia; depressive disorder, not otherwise specified; post traumatic stress disorder; and a left knee sprain in 2003.  (Tr. 93-4).  The ALJ found that plaintiff cannot lift or carry more than 10 pounds frequently or 20 pounds occasionally.  She cannot stand or walk more than 15 minutes at a time or more than 2 hours in an 8-hour day.  She can only occasionally stoop, squat, crouch, crawl, kneel or climb.  Regarding mental limitations, the ALJ determined:

> The claimant has mild restriction of activities of daily living, not preventing her from completing such daily activity functions such as bathing, grooming, dressing, cooking, house cleaning, using public transportation, driving or handling financial matters; mild difficulties in maintaining social functioning, not preventing interaction with coworkers, supervisors or the public during the workday; mild difficulties in maintaining concentration, persistence or pace, not precluding her from completing simple work-related tasks in a timely manner, or understanding, remembering and carrying out simple instructions in a timely manner; and she has had no repeated episodes of decompensation, each of extended duration.

(Tr. 92).

Plaintiff is a "younger individual" (born February 5, 1963) who has a GED and one year of college. The ALJ concluded that plaintiff could perform unskilled sedentary jobs such as a cashier, surveillance systems monitor and electronics sub-assembler. (Tr. 94).

III. ARGUMENTS

A. <u>Plaintiff's husband's statements</u>

Plaintiff's first argument is that the ALJ failed to consider third-party information and observations as required by 20 C.F.R. §§ 416.929, 404.1529, 404.1513(d), 404.416.913(d), 404.1545(a)(3), 404.945(a)(3) and SSR 96-7p, 96-8p and 85-16. Third-party observations from non-medical sources are found in the record from plaintiff's husband, William G. Grimes, and plaintiff's friend, Vickie Rader. The ALJ considered Rader's testimony in his decision. So, for the purposes of this argument, the court will focus upon the statements by plaintiff's husband.

There were two statements in the record from plaintiff's husband. (Tr. 201-205, 237-241). He indicated that plaintiff has had increasing difficulties with fatigue; that she spends six to ten days of the month recuperating from prior activity; that she has had increasing difficulties with memory; that vomiting and a sensitive stomach are problematic; that plaintiff does the chores and takes care of her dog, but she and her husband help each other out and things still back up; that they don't go out; that

plaintiff reads frequently and watches a religious program on television early every morning; and that plaintiff fixes at least one meal a day.

The ALJ did not mention the statements from plaintiff's husband in his decision. Nor does defendant make any direct response to this part of plaintiff's argument. Defendant only argues that the ALJ's decision is supported by substantial evidence.

B. <u>Credibility of physical complaints</u>

Plaintiff raises a variety of arguments against the credibility determination of the ALJ. In his decision, the ALJ reviewed plaintiff's testimony, but concluded that the "objective medical evidence" did not support her subjective complaints of physical limitations. The ALJ stated:

> The claimant's repeated physical and neurological examinations of record have consistently been essentially normal since her alleged onset date in all material respects, with full range of motion in all joints and no neurological deficits. Physical examinations have only showed some mildly decreased grip strength and tenderness or trigger points subjectively reported by claimant.

(Tr. 91).

In addition, the ALJ commented that: claimant had not been to the emergency room for any impairment since her alleged onset date except for when she fell and injured her knee; her lab tests for liver function were essentially normal; she has not undergone treatment for hepatitis C; and there is evidence of malingering

5

reported by Dr. Magnotta on his physical examination.

Plaintiff criticizes the ALJ's credibility analysis, in part, on the grounds that it is factually inaccurate. Plaintiff argues without rebuttal from defendant that plaintiff has been diagnosed several times with fibromyalgia and hepatitis C. The ALJ has accepted these diagnoses. Therefore, there is an "objective" basis for plaintiff's complaints of pain and fatigue. Defendant argues in rejoinder that plaintiff's symptoms of pain or fatigue are not so severe as to totally disable her from all employment and that objective evidence does not support the alleged severity of plaintiff's pain and fatigue. While making this argument, however, defendant concedes that the ALJ erred in stating that plaintiff had not gone to the emergency room for anything other than her left knee sprain and that Dr. Magnotta found evidence of symptom magnification or malingering. Defendant admits that plaintiff has visited the emergency room on five occasions as listed in plaintiff's brief. Doc. No. 12 at pp. 30-31. Defendant further admits that the ALJ misconstrued Dr. Magnotta's reference to "giveaway weakness" during a physical examination and that Dr. Magnotta did not find that plaintiff was exaggerating her symptoms.[1]

---

[1] The court notes that there is a reference to "possible malingering" in an intake record from Valeo Behavioral Health Care completed on May 21, 2003. (Tr. 62). But, this is not mentioned or relied upon by the ALJ.

Defendant makes four arguments in support of the ALJ's credibility determination as it relates to plaintiff's physical limitations. Defendant argues that plaintiff's quantity and strength of pain medication was inconsistent with her alleged symptoms. This argument, however, was not used by the ALJ to question plaintiff's credibility. The ALJ observed that plaintiff took ibuprofen and avoided medications because of her liver. He did not conclude that this was grounds to disbelieve her reported symptoms. Moreover, the argument does not consider or explore the possible reasons for limiting plaintiff's medication. The record indicates that plaintiff suffers from gastric problems, liver problems, is fearful of medication, and has financial problems which could explain in whole or in part why she did not take medication. The ALJ did refer to the fact that plaintiff had not undergone active treatment for hepatitis C. However, he also found that treatment may have been delayed because of plaintiff's ongoing problems with depression and PTSD.

Defendant notes that no treating physician has given an opinion that plaintiff was unable to work. This appears to be accurate, but also of limited value. No treating or consulting physician has given an opinion that plaintiff was able to work either. The regulations indicate that little or no weight is given to such opinions. See 20 C.F.R. § 404.1527(e) (ability to do substantial gainful employment is a decision reserved for the

Commissioner).

Defendant also contends that plaintiff's efforts at part-time employment were inconsistent with her complaints of pain and fatigue. The ALJ found that plaintiff worked part-time as a banquet server for brief periods through a temporary agency; worked at several telemarketing jobs, the longest job lasting from one to two months for a satellite dish company; worked five to six months as a parking lot attendant; and worked from June 2002 through April 13, 2003 as a delivery driver for Pizza Hut. (Tr. 92). Defendant is entitled to consider plaintiff's part-time employment when evaluating the credibility of plaintiff's alleged symptoms. Jesse v. Barnhart, 323 F.Supp.2d 1100, 1106 (D.Kan. 2004). The ALJ was also justified in considering plaintiff's efforts at part-time employment in evaluating the credibility of plaintiff's version of her limited household activities and her alleged need to lie down and elevate her feet for hours at a time on a daily basis. However, work attempts may be considered as evidence of plaintiff's motivation to work as well and, therefore, bolster her credibility. See Ward v. Apfel, 65 F.Supp.2d 1208, 1214-15 (D.Kan. 1999).

Finally, defendant asserts that plaintiff's household activities are inconsistent with her alleged physical limitations. This contention is not consistent with the analysis of the ALJ. Plaintiff testified that she does not mow the yard; that her husband helps her with the laundry which is done once a month; that

she does the shopping once every two weeks; and that she lies around the house most days with her legs elevated.  She picks up the house a little bit, if she feels well enough.  She does not bathe daily because most days she is in too much pain.  Some nights she has trouble sleeping.  Other times all she wants to do is sleep.  (Tr. 587-88).  The ALJ did not find that plaintiff's household activities were inconsistent with her alleged physical limitations.  Instead, the ALJ was incredulous of plaintiff's recitation of her daily pursuits because it was inconsistent, in his opinion, with plaintiff's medical record and plaintiff's part-time employment.

Plaintiff criticizes the ALJ's credibility analysis because he did not consider plaintiff's husband's report at all and because he gave limited consideration to the testimony of plaintiff's long-time friend, Vickie Rader.  Rader's testimony was consistent with plaintiff's description of her physical and mental limitations, particularly plaintiff's fatigue and depression.  However, the ALJ did not give Rader's testimony weight because he thought it was inconsistent with the medical record.  (Tr. 91-92).

C.  Evaluation of mental complaints

The ALJ rejected plaintiff's testimony regarding her mental condition.  He commented that plaintiff has had very little treatment for her mental symptoms and "is not taking any anti-depressant or anxiety medications." (Tr. 91).  He further stated

9

that plaintiff's mental examinations have been normal or near normal, making direct reference to examinations by Dr. Ohlde and Valeo Medical Services. (Tr. 91).

Plaintiff makes several arguments against the ALJ's analysis. First, plaintiff contends, and defendant admits, that the ALJ was factually incorrect about plaintiff's medication. Plaintiff's hearing before the ALJ was in January 2004. The record indicates that plaintiff took medication for her mental symptoms before and after that date. See, e.g., 9/28/04 report of Dr. Schroeder at Tr. 31; medication record from Valeo Behavioral Health Care at Tr. 48; 3/31/99 record of Shawnee County Health Agency at Tr. 329; and 3/21/01 medication record of Shawnee Community Mental Health Center at Tr. 341. The record also indicates there were times when plaintiff did not take or did not follow up with prescribed medication and scheduled visits. E.g., Tr. 343, 369, 322, 313.

Secondly, plaintiff argues that the ALJ mischaracterizes Dr. Ohlde's examination results as "normal or nearly normal." Dr. Ohlde examined plaintiff in August of 2001 and February of 2002. Both times he diagnosed plaintiff with "depressive order not otherwise specified." He found that plaintiff's social contacts and activity level for a typical day "could be consistent with her emotional concerns." (Tr. 363). However, he also determined that her social skills and powers of attention/concentration, memory, functioning, adaptability, and persistence were adequate to perform

10

work and handle finances.  (Tr. 363).

Thirdly, plaintiff contests the ALJ's characterization of plaintiff's intake mental status examination at Valeo Behavioral Health Care in May 2003.  The ALJ said the intake exam was "essentially normal." (Tr. 89).  However, a subnormal GAF (Global Assessment of Functioning) score of 40 was assigned to plaintiff. (Tr. 462).  Plaintiff was assessed to be irritable, evasive, overly dramatic, manipulative and dependent, with an unstable mood and feelings of hopelessness, guilt and worthlessness.  Her clothing and hygiene were considered poor.  She spoke excessively and she avoided her interviewer's gaze.  (Tr. 464).  Plaintiff was considered to have symptoms of depression and anxiety.  (Tr. 465). While this might not be considered "normal," plaintiff was assessed to have a normal flow of thought, normal memory, normal insight and judgment, normal intellect, and normal motor activity.  Plaintiff was not suffering from delusions or hallucinations.  (Tr. 464). Because of the number of benign observations, the ALJ determined that the GAF score of 40 was unsupported by the plaintiff's examination.  (Tr. 88).

Fourth, plaintiff asserts that the ALJ ignored the March 12, 2001 mental health assessment at the Shawnee County Mental Health Center.  At that time she received a GAF score of 49 (which again is not a "normal" score) and was considered to have symptoms of depression and anxiety.  (Tr. 332-34).  The examination also

11

indicated that plaintiff was oriented in all four spheres. (Tr. 334). This examination is not discussed by the ALJ in his decision or by defendant in his brief. Plaintiff further draws attention to other notations in various medical records where plaintiff's affect, memory, or mood was considered abnormal in the view of others. Doc. No. 12 at p. 38.

D. <u>Function-by-function analysis</u>

Plaintiff's next argument is that at step four of the sequential analysis, the ALJ failed to base his RFC determination on substantial evidence. Plaintiff asserts that the ALJ failed to consider evidence which has been referenced earlier in this opinion. In addition, plaintiff argues that the ALJ failed to perform the function-by-function analysis required by SSR 96-8p. Under that rule, the RFC assessment must address each of seven strength demands to determine a claimant's exertional capacity. Those seven strength demands are: sitting, standing, walking, lifting, carrying, pushing and pulling. Although defendant contends that the ALJ "substantially complied" with the requirement, it is clear that, contrary to SSR 96-8p, the ALJ did not address plaintiff's capacity to sit, push and pull. (Tr. 92, 94). The failure to make specific findings regarding a claimant's ability to sit throughout an 8-hour day is grounds for remand to make a proper RFC determination. <u>Jesse</u>, 323 F.Supp.2d at 1110.

E. <u>Weight given to opinions of examining physicians</u>

12

Plaintiff further argues that contrary to 20 C.F.R. §§ 404.1527 and 416.927, the ALJ failed to explain the weight he gave to the opinions of three examining physicians:  Dr. Perkins, Dr. Verstraete, and Dr. Magnotta.  Plaintiff also contends that the ALJ did not properly assess the weight to give the GAF score of 40 as determined at Valeo Behavioral Health Care in May 2003.   In addition, plaintiff notes that the ALJ omitted any discussion of the GAF score of 49 which was assessed at the Shawnee County Mental Health Center on March 12, 2001.  (Tr. 332).  Defendant responds that the ALJ substantially complied with the requirements of the law in his consideration of the examining physicians' reports. Defendant further contends that the ALJ gave good reasons for dismissing the GAF score of 40 and that the GAF score of 49 occurred two years prior to the score of 40.  For that reason and others relating to all GAF scores, defendant contends the GAF score of 49 is not especially relevant to the issue of whether plaintiff is capable of substantial gainful employment.

IV.  REVIEW AND ANALYSIS

Upon review of the many arguments in this case, the court concludes that the ALJ failed to apply the correct legal standards in his consideration of this case.

Under 20 C.F.R. §§ 416.929(c)(3) and 404.1529(c)(3), the ALJ was supposed to give consideration to third-party information and observations as an "important indicator of the intensity and

persistence" of a claimant's symptoms.  In this case, the ALJ
appeared to give no consideration to the observations of
plaintiff's husband.

Under 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii),
when controlling weight is not given to a treating source's
opinion, the ALJ "must explain the weight given to the opinions of
a State Agency medical or psychological consultant or other program
physician or psychologist, as the administrative law judge must do
for any opinions from treating sources, nontreating sources, and
other nonexamining sources who do not work for us."  In this case,
the ALJ did not explain the weight given to the opinions of Dr.
Perkins, Dr. Verstraete, and Dr. Magnotta with regard to
plaintiff's physical and mental limitations.  Nor did the ALJ
explain the weight given to the GAF score of the Shawnee County
Mental Health Center. "[A] low GAF score does not alone determine
disability, but is instead a piece of evidence to be considered
with the rest of the record." Petree v. Astrue, 2007 WL 4554293 at
*8 (10th Cir. 2007).

Under Social Security Rule 96-8p, an RFC assessment of a
claimant's exertional capacity must consider separately a
claimant's remaining ability to sit, stand, walk, lift, carry, push
and pull.  1996 WL 374184 at *5.  In this case, the ALJ did not
consider or address plaintiff's remaining capacity to sit, push and
pull.

An ALJ must link his credibility findings to substantial evidence.  <u>Anderson v. Apfel</u>, 100 F.Supp.2d 1278, 1289 (D.Kan. 2000).  "'Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  <u>Id</u>., quoting <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988).  In this case, the ALJ made credibility findings with reference to incorrect factual findings, such as that plaintiff did not take medication for her mental health and that plaintiff had not visited the emergency room for something other than a knee sprain.  The ALJ also misread a statement by Dr. Magnotta as an indication of malingering by plaintiff.  The linchpin to the ALJ's credibility analysis appears to be plaintiff's so-called "normal" mental health findings and the absence of objective test results showing fibromyalgia.  However, the ALJ concluded that plaintiff suffered from depression and fibromyalgia in addition to other severe conditions.[2]  Therefore, the issue is the degree of functional limitation caused by plaintiff's severe conditions.  The ALJ's analysis of the credibility of plaintiff's alleged limitations left out a consideration of plaintiff's husband's statements and one of the GAF scores, referred to factually inaccurate information regarding

---

[2] Moreover, "[t]he symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity."  <u>Ward v. Apfel</u>, 65 F.Supp.2d 1208, 1213 (D.Kan. 1999) (citing <u>Sarchet v Chater</u>, 78 F.3d 305, 306 (7th Cir. 1996)).

plaintiff's medication and medical visits, and ignored certain other references in medical records which provided evidence to support plaintiff's claim of mental limitations.  An ALJ "may not ignore evidence that does not support his decision, especially when that evidence is significantly probative."  <u>Briggs ex rel. Briggs v. Massanari</u>, 248 F.3d 1235, 1239 (10th Cir. 2001)(interior quotation omitted).  The court does not believe plaintiff's part-time employment and the areas of "normality" found in plaintiff's mental and physical examinations are sufficient to support the ALJ's credibility findings given the above-mentioned errors in the ALJ's credibility analysis.

Additionally, to the extent that an ALJ relies upon a claimant's failure to pursue treatment or take medication as support for a credibility finding, the ALJ must consider:  "'(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.'"  <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1490 (10th Cir. 1993) (quoting <u>Frey v. Bowen</u>, 816 F.2d 508, 512 (10th Cir. 1987)); see also, Soc.Sec.Rul. 96-7p, 1996 WL 374186.  As mentioned previously, the ALJ did not appear to consider plaintiff's failure to seek treatment or use medication as a key point in his credibility analysis. However, to the extent this was a factor in his judgment, he did not consider the matters

16

summarized in Thompson as part of his credibility determination in this case.

V.   CONCLUSION

The court shall reverse and remand the defendant's decision to deny benefits in this case pursuant to sentence four of 42 U.S.C. § 405(g) and direct that further proceedings be conducted in accordance with this order.

Plaintiff contends that the court should not remand this case for further fact-finding and instead should remand for an award of benefits.  The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.  Gilliland v. Heckler, 786 F.2d 178, 184-85 (3rd Cir. 1986).  We may consider the amount of time the matter has been pending and whether or not a remand for additional fact-finding would serve a useful purpose or merely delay the receipt of benefits.  Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006). Although plaintiff's application for benefits has been pending for a lengthy period of time, the court cannot say that there is substantial and uncontradicted evidence on the record that indicates that claimant is disabled.  We believe additional fact-finding would serve a useful purpose.  Therefore, the court shall remand this case for an additional assessment of plaintiff's

17

ability to perform substantial gainful employment in accordance with this memorandum and order.

**IT IS SO ORDERED.**

     Dated this 30th day of April, 2008 at Topeka, Kansas.


                     s/Richard D. Rogers
                     United States District Judge